UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT J. CRAIG, | Case No. 2:17-cv-02978-GMN-EJY |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | Re: Motion for Reversal and Remand (ECF No. 17) |
| Defendant. | |

Plaintiff Robert J. Craig ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner" or the "Agency") that denied his application for disability insurance and disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the Commissioner's decision should be affirmed.

**I.      BACKGROUND**

On February 3, 2014, Plaintiff filed an application for DIB alleging commencement of his disability on August 15, 2013. Administrative Record ("AR") 137-43. The Commissioner denied Plaintiff's claims on June 25, 2014. AR 75-79. Reconsideration was then denied on December 11, 2014. AR 85-89. On February 3, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 90-91. After conducting a hearing on March 23, 2016 (AR 29-46), the ALJ issued his opinion on June 13, 2016 (AR 12-28), finding Plaintiff was not disabled. On August 16, 2016, Plaintiff requested that the Appeals Council review the decision by the ALJ. AR 133-36. On October 19, 2017, the Appeals Council denied the request for review. AR 1-6. This civil action followed.

**II.      STANDARD OF REVIEW**

A reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

1

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.    DISCUSSION

**A.    Establishing Disability Under The Act**

To establish that a claimant is disabled under the Act, there must be substantial evidence that:

(a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (internal citation omitted). "If a claimant meets both requirements, he or she is disabled." *Id.*

An ALJ employs a sequential five-step evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(b). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent

steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

1.    Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

2.    Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

3.    Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

4.    Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

5.    Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. *See id.*

*Id.* at 1098-99.

**B.    Summary of ALJ's Findings**

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since August 15, 2013, the date the application was filed. AR 17. At step two, the ALJ found Plaintiff suffered from medically determinable severe impairments consisting of a history of

acquired immune deficiency syndrome ("AIDS"), peripheral edema of the bilateral extremities with neuropathy, bilateral hammertoe deformities, and obesity.  *Id.*  The ALJ found at step three that Plaintiff's impairment or combination of impairments did not meet or equal any "listed" impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20.

In preparation for step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he is unable to climb ladders, ropes or scaffolds.  He is able to occasionally climb ramps and stairs, stoop, kneel, crouch and crawl.  He is able to occasionally be around temperature extremes.  He is unable to walk in the dark (i.e., unlighted areas) and can have no exposure to hazards such as heights and dangerous moving machinery.

*Id.*[1]  Thereafter, the ALJ found that Plaintiff was capable of performing past relevant work as a travel clerk.  AR 23.  "This work does not require the performance of work-related activities precluded by the claimant's RFC."  *Id.*  The ALJ, therefore, found "[Plaintiff] has not been under a disability, as defined in the Social Security Act, from August 15, 2013, through the date of [the ALJ's] decision."  *Id.*  The ALJ based his finding on the testimony of the vocational expert, Plaintiff's work history, and Plaintiff's income records.  *Id.*

The ALJ did not consider step five because he found Plaintiff not disabled at step four in the sequential evaluation process.  *See Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520.

**C.    <u>Summary of Medical Evidence</u>**

In April 2013, Plaintiff visited Southwest Medical Associates, Inc., where he reported hallucinogenic side effects from Lyrica, a medication he was taking for his neuropathy.  AR 247.  Plaintiff expressed a desire to "discontinue this medication if at all possible."  *Id.*  "Prior to . . . Lyrica, the patient also experienced undesirable side effects with Gabapentin [another neuropathy medication]."  *Id.*  Plaintiff "denie[d] depression, admit[ted] to being 'stressed out or overwhelmed' at times.  [Plaintiff] also denie[d] antidepressants as well as being under the care of a mental health provider."  *Id.*

---

[1]    "Residual functional capacity" is defined by the regulations as "the most you can still do despite your limitations."  20 C.F.R. § 416.945(a)(1).

In May 2013, Dr. Paul McHugh assessed Plaintiff with edema in his bilateral extremities, cellulitis left lower extremities, and open wounds. AR 236-237. Plaintiff denied being depressed, suicidal, homicidal, delusional, or hallucinating. AR 236. Dr. McHugh advised Plaintiff to go to the emergency room and expressed concerns about deep vein thrombosis and pulmonary embolus. AR 237. In October 2013, Plaintiff saw Dr. Howard Ehrenfeld and reported a reduction in the swelling of his legs. AR 317. Plaintiff appeared with 1+ edema in his lower legs, reduced vibration in the distal half of both feet, reduced pinprick below the mid-calf, and his gait was antalgic. *Id*. At a routine follow up visit with Dr. McHugh two days later, Plaintiff again denied being depressed, suicidal, homicidal, delusional, or hallucinating. AR 238.

In July 2013, Plaintiff returned to Southwest Medical Associates, Inc., where he reported replacing his Lyrica regimen with Cymbalta 30mg. AR 252. Plaintiff "admit[ted] to mild intermittent depression. However, he denie[d] suicidal ideation ever since the discontinuation of the Lyrica. [Plaintiff] will also consider undergoing the treatment with a mental health provider." *Id*.

In April 2014, Plaintiff saw Dr. McHugh with swelling in his lower extremities. AR 338. He appeared with 2+ edema bilaterally. *Id*. Dr. McHugh noted that there was one area of Plaintiff's skin that "seemed to be oozing a little bit." *Id*. Later that month, psychologist Richard Yao, Ph.D., conducted a psychological consultative examination of Plaintiff. AR 291-296. Plaintiff recalled five out of six words on a short-term memory test. AR 293. Plaintiff recalled four out of six words on a long-term memory test, and one more word with additional prompting. AR 293-294. Plaintiff completed serial seven's to 86 and completed serial three's without any difficulty. AR 294. Dr. Yao concluded that Plaintiff could "understand, remember, and carry out a variety of complex, detailed, and simple instructions on a sustained basis," and could interact appropriately with supervisors, coworkers, and the general public. AR 295. Dr. Yao diagnosed Plaintiff with unspecified depressive disorder. *Id*.

In May 2014, Plaintiff did "not admit to being depressed or anxious" to Dr. McHugh. AR 358. Two months later, Dr. McHugh noted Plaintiff's edema had "improved considerably" since they last saw one another. AR 354. In August 2014, Plaintiff's podiatrist Dr. Jeremy Tilton observed lesions under Plaintiff's toes and nails. AR 381. Plaintiff reported feeling loss of protective

sensation bilaterally. *Id*. In September 2014, Dr. Sunil Kalla reported Plaintiff's edema had "resolved since he quit his job [as a flight attendant] and he elevated his legs." AR 346. Plaintiff showcased "minimal symptoms of burning/cramping," and "his swelling is controlled as long as he doesn't stand too long." *Id*. An ultrasound of Plaintiff's lower extremities was positive for bilateral great saphenous vein ("GSV") reflux, but negative for deep vein thrombosis. AR 349. Three days after his ultrasound, Plaintiff was seen by Dr. McHugh with visual issues, potential balancing issues, and memory loss. AR 383. Plaintiff appeared with edema 1+. *Id*. Dr. McHugh noted that Plaintiff's "venous insufficiency or incompetent valves . . . tends to resolve after he elevates his legs at night. Much less swelling during the day." *Id*.

Later in September 2014, Plaintiff's neurologist, Dr. Omar B. Cabahug, observed symmetric decrease in touch and pinprick in a stocking more than glove distribution, evidence of right carpal tunnel syndrome, and probable bilateral cubital tunnel syndrome. AR 395, 396. Plaintiff reported that he suffered from "some cognitive or memory loss" after given Gabapentin for his neuropathy "about a year and a half ago." AR 395. "[D]espite being off the medication, [Plaintiff] continues to have this cognitive impairment." *Id*. Plaintiff also reported side effects from Lyrica, the neuropathy medication he began taking after ceasing use of Gabapentin. *Id*. Additionally, Plaintiff "is taking Cymbalta 30mg [for his neuropathy] . . . which according to him is not enough." *Id*. Dr. Cabahug found Plaintiff's score of 25/30 on the Montreal Cognitive Assessment ("MOCA") test significant because Plaintiff had finished some college. *Id*. "With regards to the cognitive impairment, [Dr. Cabahug was] concerned about potential CNS involvement with [Plaintiff's] AIDS and/or [adverse effects] to medication." AR 396. Plaintiff "denie[d] any active signs of depression" and "any suicidal or homicidal ideation." AR 395.

In October 2014, Dr. Tilton noted that Plaintiff felt increased pain to his left second toe because of a persistent callus, and continued to have loss of protective sensation bilaterally. AR 404. In June 2015, Plaintiff told Dr. Cabahug that his neuropathy pain has been controlled since increasing his Cymbalta dosage to 60mg. AR 409. Dr. Cabahug opined that Plaintiff's "cognitive impairment is stable." *Id*. Plaintiff again scored 25/30 on the MOCA testing. *Id*. Dr. Cabahug assessed Plaintiff with "mild cognitive impairment probably related to his AIDS and/or anti-viral

treatment," "mild to moderate white matter disease on the recent [November 21, 2014] MRI of the brain," "mild bilateral carpal tunnel syndrome and moderate to severe peripheral neuropathy of the lower extremities more than the upper extremities," and "elevated homocysteine level." *Id*. Plaintiff denied depression, mood problems, and suicidal or homicidal ideation. *Id*.

**D.    Plaintiff's Symptom Testimony**

Plaintiff was born on January 5, 1960, and was fifty-six years old at the time of his hearing. AR 35. Plaintiff stopped working because he could no longer stand up. AR 34. Since Plaintiff has stopped working, he spends most of his time on the couch with his legs elevated so that they remain smaller. *Id*. Plaintiff uses the computer for brief intervals, watches television, and does "little, small chores" around the house when he is able to. *Id*. Plaintiff reports side effects from his neuropathy medication. *Id*. Plaintiff does not drink alcohol, nor does he use any illegal street drugs. AR 35. Plaintiff cannot drive for long distances or to unknown places, because he forgets how to get home and begins experiencing "shooting pains" in his leg. AR 36. Plaintiff has "occasional" difficulty reading and writing. *Id*. At his concierge job, Plaintiff was on his feet the majority of an eight-hour shift and lifted anywhere between twenty-five to thirty-five pounds at a time. *Id*. Plaintiff's doctors advised that surgery may be appropriate for his collapsed veins, but said "if [Plaintiff] can remain with [his] legs elevated and keep the buildup from making [his] legs three times their normal size, then that would be okay." AR 37. Plaintiff has problems using his wrists and hands, and his toes have curled in and atrophied. *Id*. Plaintiff can sit comfortably for approximately thirty minutes before he has to change position or stand. *Id*. If Plaintiff does not put his feet up after that time, he experiences electrical shocks through his toes, which creep up through the top of his foot. AR 37-38. Plaintiff can stand on his feet for about ten minutes at a time before he has to sit down. AR 38. Plaintiff experiences difficulty going up the stairs, and it is nearly impossible for him to go down stairs. *Id*. Plaintiff has no problem reaching above his head to grab a plate or a can off the kitchen shelf, although he later remarked that he is unable to do so if he closes his eyes. AR 38-39. Plaintiff cannot get in a praying position on both knees, nor can he squat like a catcher on a baseball team and get up again without any help. AR 38. Plaintiff uses ramps and wheelchairs for long distances. *Id*. Plaintiff does not engage in regular social activities outside his house. *Id*. Plaintiff has problems

taking a bath or showering, because his neuropathy causes him to fall down if he leans his head backwards or close his eyes. AR 39. Plaintiff uses handhelds, his chair, and his partner for balance when he showers. *Id.* Plaintiff has problems getting dressed; in particular, he experiences difficulty putting his shoes and socks on if his legs swell and/or lock. AR 40. Plaintiff can use zippers, but he has been experiencing more and more difficulty using buttons because he does not "have the strength in [his] fingers." *Id.* Plaintiff confirmed he was taking all the medication listed on AR 220, as well as Lortab.[2] *Id.* Plaintiff's shoe size grew from thirteen to fifteen because of the swelling, and he constantly trips over his feet. AR 40-41. Plaintiff's memory used to be "incredible" until he began taking his neuropathy medication Gabapentin, which caused him to suffer from memory loss. AR 41. Plaintiff's memory loss prevents him from forming sentences, causes him to "really think before [he] speak[s]," and makes him unable to understand what "certain things are." *Id.*

**E.    <u>Vocational Expert Testimony</u>**

During the March 23, 2016 hearing, vocational expert ("VE") Harlan Stock testified that Plaintiff most recently worked as a travel clerk, DOT ("Dictionary of Occupational Titles") 238.367-030.[3] AR 42. VE Stock testified that the travel clerk occupation is sedentary, but Plaintiff actually performed his job at the medium exertional level at times. *Id.* Before he worked as a travel clerk (which is also referred to as a "concierge" by the VE), Plaintiff worked as an airline flight attendant, DOT 352.367-010. *Id.* VE Stock testified that the airline flight attendant occupation requires medium exertion, and heavy exertion as performed by Plaintiff. *Id.*

The ALJ asked VE Stock to assume a hypothetical man as follows:

---

[2]    Plaintiff takes Cymbalta for neuropathy; Dexilant for heartburn; Lomotil for diarrhea; and Norvir, Reytaz, and Truvada for AIDS. AR 220.

[3]    The DOT defines the duties of a "travel clerk" as follows:

Provides travel information and arranges accommodations for tourists: Answers in queries, offers suggestions, and provides descriptive literature pertaining to trips, excursions, sports events, concerts, and plays. Discusses routes, time schedules, rates, and types of accommodations with patrons to determine preferences and makes reservations. Verifies arrival and departure times, traces routes on maps, and arranges for baggage handling and other services requested by guests. May deliver tickets. May arrange for visas and other documents required by foreign travelers. May contact individuals and groups to inform them of package tours.

DOT 238.367-030, 1991 WL 672209.

at or closely approaching or of advanced age, with a combination of impairments that would result in limiting him to light work as defined by the DOT and the Social Security regulations, with occasional climbing of stairs and ramps, and no climbing of ladders, ropes, or scaffolds; occasional balancing, occasional stooping, occasional kneeling, occasional crouching, no crawling, occasional exposure to temperature extremes and no exposure to hazards such as heights or dangerous moving machinery.

AR 42-43. The ALJ then asked VE Stock if the hypothetical man with the abovementioned limitations would be able to do any of Plaintiff's past work. AR 43. VE Stock responded that this hypothetical man could work as a "travel clerk, per the DOT, not as performed" by Plaintiff. *Id*. According to the VE, being unable to walk in dark would have no effect on working as a travel clerk. *Id*. A hypothetical man who has limited "understanding, remembering, and [ability to] carry[] out work instructions" and "exercising judgment to perform simple work tasks" would not be able to work as a travel clerk. AR 44. VE Stock confirmed that his testimony was consistent with the DOT and its companion publications. *Id*.

On cross examination by Plaintiff's attorney, VE Stock testified that all employment would be eliminated if the hypothetical man were "off-task 15 percent of the time or more." *Id*. All employment would be eliminated if the hypothetical man "miss[ed] four days of work per month or more." *Id*. All employment would be eliminated if the hypothetical man had to keep his "feet elevated for most of the work day." *Id*. The "concierge/travel clerk job" would be eliminated if the hypothetical man person could talk less than "frequent[ly]." AR 44-45. All light employment would be eliminated if the hypothetical man "could only stand for a few minutes every hour." AR 45.

**F.    Issues Presented**

Plaintiff contends the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff states the ALJ: (1) failed to articulate specific and legitimate reasons for rejecting Plaintiff's testimony regarding pain, symptoms, and levels of limitations; and (2) erroneously relied on the vocational expert testimony who failed to adequately classify Plaintiff's past relevant work. ECF No. 17 at 8-22.

**1.    The ALJ's Consideration Of Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred by failing to articulate clear and convincing reasons for discounting Plaintiff's subjective complaints. ECF No. 17 at 8-17. The ALJ must engage in a two-

step analysis to determine whether to discount a claimant's testimony regarding his subjective symptoms.[4] First, the ALJ must determine "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Plaintiff is "not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; Plaintiff need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal citations and quotations omitted). Second, if "there is no evidence of malingering, 'the ALJ may reject the claimant's testimony concerning the severity of his symptoms only by offering clear and convincing reasons for doing so.'" *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). The Ninth Circuit has affirmed that "this is not an easy requirement to meet: 'The clear and convincing [evidence] standard is the most demanding required in Social Security cases.'" *Id*. at 1015 (citing *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

For cases involving ALJ decisions rendered on or after March 24, 2016, elements to be considered when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).

---

[4] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). Both regulations require the ALJ to evaluate the same factors including the intensity, persistence, and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

A claimant's statements about his pain or other symptoms alone will not establish that he is disabled. 20 C.F.R. § 416.929(a)(1), 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). A claimant is "not entitled to benefits under the [Social Security Act] unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (internal citation omitted).

The ALJ is instructed to "consider all of the evidence in an individual's record . . . to determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2. An ALJ's finding on this matter must be properly supported by the record and "sufficiently specific" to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 948, 958 (9th Cir. 2002) (internal citation omitted); *Bunnell*, 947 F.2d at 345-46. In turn, the courts review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (internal citation omitted).

At step one in the symptom evaluation analysis, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 23. At step two, however, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. The Court discusses each of the ALJ's findings below.

        a.    <u>The ALJ properly determined that the objective evidence in this case did not support the degree of limitations alleged by Plaintiff</u>.

The ALJ found that the objective evidence did not support the degree of limitations Plaintiff alleged. AR 21. In determining the extent of Plaintiff's symptoms, the ALJ must consider whether there are any conflicts between Plaintiff's statements and the objective medical evidence. 20 C.F.R. § 416.929(c)(4). In particular, the ALJ must assess whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. SSR 16-3p; § 404.1529(c)(2) ("[o]bjective medical evidence

is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques . . .").  The ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  However, the objective medical evidence is still a relevant factor in determining the severity of a plaintiff's symptoms and their disabling effects.  *Id.*; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

>            i.       *Plaintiff's alleged physical health symptoms are inconsistent with the objective medical evidence.*

With respect to Plaintiff's physical health symptoms, the ALJ found the objective findings in this case failed to provide strong support for Plaintiff's allegations of disabling peripheral neuropathy or lower leg limitations that would prevent him from performing sedentary work.[5]  AR 21.  Plaintiff alleges the ALJ failed to identify inconsistencies between the objective record and his description of his pain, symptoms, and limitations, which he is required to do.  ECF No. 17 at 12; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony") (internal citation omitted).

However, the administrative record is to the contrary.  Regarding, peripheral edema of the bilateral lower extremities with neuropathy, the ALJ acknowledged Plaintiff's steady, but mild antalgic gait, 2+ edema, reduced vibratory sense, and reduced pinprick in the bilateral lower extremities.  AR 21.  The ALJ noted that Plaintiff retained 5/5 motor strength in the bilateral lower extremities, and although a lower extremity ultrasound showed some venous insufficiency, Plaintiff's treating physicians recommended only conservative modalities to treat his peripheral neuropathy.  *Id.*  Dr. Tilton reported that "the [Plaintiff] was on several medications for neuropathy that seemed to be working for him."  AR 378.  Dr. McHugh found that Plaintiff's peripheral edema had "improved considerably" (AR 354) and there was "no ankle edema" (AR 357).  The one time Dr. McHugh found edema, he reported that the swelling "tends to resolve after [Plaintiff] elevates

---

[5]         "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

his legs at night." AR 383. Dr. Kalla noted that "there is no ankle edema" and "there is no evidence of any edema." AR 364. As to Plaintiff's bilateral hammertoe deformities, Dr. Tilton reported that Plaintiff had severe hammertoes, 2 to 5 bilaterally, and mallet toes bilateral great toes with reducible deformities. AR 379. At the same time, Dr. Tilton stated that Plaintiff's issues with bilateral hammertoes were being addressed successfully. AR 378. None of Plaintiff's physicians assessed physical limitations consistent with Plaintiff's testimony regarding his alleged disability.

Plaintiff argues the ALJ failed to discuss the electrodiagnostic ("EMG") and nerve conduction study that revealed evidence of moderate to severe peripheral neuropathy of the bilateral lower extremities affecting sensory components. ECF No. 17 at 6, 11-12; AR 397. Plaintiff also correctly alleges that none of the non-examining state agency consultants who reviewed the medical evidence made mention of the EMG or nerve conduction study. ECF No. 17 at 12; AR 54-55, 66-67, 69-71. Plaintiff cites two decisions for the proposition that an ALJ is not qualified to interpret raw medical data in functional terms when no medical opinion supports the determination. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (collecting cases); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The present case is distinguishable from these two case upon which Plaintiff depends for support.

Here, Plaintiff takes issue with the *failure* of the ALJ to discuss the EMG and nerve conduction study, as opposed to an impermissible *interpretation* of these studies. Further, the ALJ did not go outside the record for the purpose of making his own assessment. Instead, the ALJ expressly based his finding on the objective medical evidence presented in this case. AR 21. As the Commissioner points out, the ALJ already limited Plaintiff to a reduced range of sedentary work based on this impairment. AR 23. Even if the ALJ erred in failing to discuss the EMG or nerve conduction study, it amounted to harmless error because the ALJ cited other valid, sufficiently supported reasons for finding the objective evidence was inconsistent with Plaintiff's allegations of disabling neuropathy, including Plaintiff's retention of 5/5 motor strength in the bilateral lower extremities; the treating physician's recommendations of conservative treatment; Plaintiff's responsiveness to medication; and, the treating physicians' medical opinions that there was no, or reduced, edema. AR 21; *see Burch*, 400 F.3d at 679; *see also Stout*, 454 F.3d at 1055.

Given the discrepancy between the medical evidence and Plaintiff's allegations of disabling peripheral edema of the bilateral lower extremities with neuropathy, there was substantial evidence to support the ALJ's finding that there was insufficient objective evidence to support Plaintiff's testimony regarding his physical health symptoms. *Bunnell*, 947 F.2d at 345 (providing the Social Security regulations require a plaintiff to present medical findings establishing an impairment).

> ii.    *Plaintiff's alleged mental health symptoms are inconsistent with the objective medical evidence.*

With respect to mental health, the ALJ found the record revealed no actual mental health treatment for Plaintiff's allegedly disabling mental impairments. AR 18-20. The ALJ gave great weight to the opinions of non-examining state agency consultants Drs. Paul Kresser and Pastora Roldan, who assessed no mental limitations. AR 19, 53-54, 67-68. Plaintiff argues that the ALJ erred in this regard, because "neither doctor examined Plaintiff in person and relied solely on the objective evidence available at the time of their review of the file." ECF No. 17 at 16. For claims filed on or after March 27, 2017, such as Plaintiff's, no "specific evidentiary weight, including controlling weight," is given "to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Therefore, while a medical source's "treatment relationship" with a claimant remains a factor considered when assessing the persuasiveness of medical source opinions, no controlling weight analysis or deferential weight presumption attaches to any opinion. *Id*.; § 416.920c(c)(3). Under the new regulations, the ALJ must "articulate how they consider[ed] medical opinions from all medical sources, regardless of [acceptable medical source] status," and such articulation need only explain how the ALJ considered the supportability and consistency factors. 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017). Here, the ALJ sufficiently articulated how he considered Dr. Yao, Dr. Kresser, and Dr. Roldan's opinions when he discussed their supportability and consistency with the other evidence. AR 19. Specifically, the ALJ found Dr. Yao's opinion should be afforded "great weight" and all three doctors' opinions were "consistent with the record as a whole, . . . including the

claimant's denial of symptoms, the mild examination findings discussed above, and with the lack of mental health treatment throughout the period at issue" despite having never examined Plaintiff in person. *Id.*[6]

Given the discrepancy between the medical evidence and Plaintiff's alleged mental health treatment, there was substantial evidence to support the ALJ's finding that there was insufficient objective evidence to support Plaintiff's testimony regarding his mental health symptoms. *Bunnell*, 947 F.2d at 345.

> iii.    *Plaintiff's alleged cognitive impairment is inconsistent with the objective medical evidence.*

The ALJ found that the "[Plaintiff's] medically determinable mental impairments of depressive disorder and mild cognitive impairment, considered singly and in combination, do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." AR 18. In April 2014, Plaintiff met with Dr. Yao who reported that Plaintiff's psychological functioning responded "very well" to his neuropathy medication at the time, Cymbalta. AR 295. Plaintiff successfully performed short-term and long-term memory tests with Dr. Yao, who in turn assessed no mental health limitations. AR 293-96. Plaintiff was actively engaged throughout the test-taking session, and showed good persistence and motivation when asked more challenging questions. AR 293. Dr. Yao determined that Plaintiff could carry out a variety of complex, detailed, and simple instructions on a sustained basis and interact appropriately with supervisors, coworkers, and the general public. AR 295. Plaintiff appeared with a stable mood and very upbeat, animated effect. *Id.* Plaintiff was "very loquacious, friendly, actively engaged, and appropriate with [Dr. Yao] throughout the assessment . . . he appear[ed] to be relatively stable on his current medication regimen." *Id.* Dr. Yao concluded that, with respect to Plaintiff's cognitive abilities, "his performance on the mental status examination indicates that his intellectual abilities

---

[6]        These findings are consistent with Plaintiff's past reports to his physicians, in which he either denied depression or reported only mild depression. AR 19, 234, 236, 238, 247, 252, 358, 395, 409. The ALJ accounted for Plaintiff's past reports in his findings of fact: "[t]he record also reveals that the claimant denied any depression or mood problems, other than being 'stressed out or overwhelmed.' He also denied taking antidepressants or being under the care of a mental health provider." AR 19, *citing* AR 247-249.

can be estimated to be in the average range.  This is consistent with his educational and extensive and successful work history.  [Plaintiff] presents with good work-related skills, which are positive indicators for vocational success if he is medically cleared."

In September 2014, Plaintiff underwent a neurological evaluation with Dr. Cabahug for his alleged cognitive impairment.  AR 395-402.  Dr. Cabahug expressed concern about Plaintiff's MOCA score of 25/30.  AR 395.  Plaintiff told Dr. Cabahug he had previously experienced memory loss when he was taking Gabapentin.  *Id*.  "Despite [Plaintiff] being off the medication," Dr. Cabahug opined that "[Plaintiff] continues to have this cognitive impairment."  *Id*.  It is worth noting that Plaintiff was taking Cymbalta 30mg at this time, "which according to Plaintiff is not enough."  AR 395.  This is significant because in June 2015, Dr. Cabahug reported that "*since increasing the Cymbalta 60mg . . . the burning or neuropathy pain in the feet is controlled.  Otherwise the cognitive impairment is stable*."  AR 409 (emphasis added).  Although Plaintiff again scored 25/30 on MOCA testing on his second visit, Dr. Cabahug nonetheless reported "no clear evidence of any dementia, and the claimant's cognitive impairment was stable."  *Id*.  Similarly, Dr. Yao found that "[Plaintiff's] thought processes were coherent and logical . . . ."  AR 293.  If anything, this medical evidence demonstrates that Plaintiff's cognitive impairment previously brought on by his neuropathy medication were ameliorated by him switching over to a different regimen.

Given the discrepancy between the medical evidence and Plaintiff's allegations of memory loss and other cognitive limitations, there was substantial evidence to support the ALJ's finding that there was insufficient objective evidence to support Plaintiff's testimony regarding his cognitive impairment.  *Bunnell*, 947 F.2d at 345.

> b.  The ALJ's determination that Plaintiff's evidence was internally inconsistent was supported by substantial evidence and provided a clear and convincing reason to discount Plaintiff's symptoms and complaints.

The ALJ found that Plaintiff's evidence of his allegedly disabling impairments was internally consistent and, therefore, did not support the degree of limitations he alleged.  AR 18-23.  In determining the extent of Plaintiff's symptoms, the ALJ must consider whether there are any inconsistencies in the evidence.  20 C.F.R. § 404.1529(c)(4) ("[w]e will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the

claimant's] statements and the rest of the evidence . . .").  Notwithstanding, "inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve over time."  SSR 16-3p.

> i.    *The ALJ was correct when finding that Plaintiff's evidence was internally inconsistent with Dr. Tilton's opinion and Plaintiff's reported daily activities.*

With respect to Plaintiff's reported daily activities, the Court finds the ALJ's findings of inconsistency in the evidence was correct.  The ALJ properly found Plaintiff engaged in a somewhat normal level of daily activity and interaction inconsistent with his allegation of disability.  AR 22-23.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  A claimant's daily activities are highly relevant when evaluating symptom testimony. 20 C.F.R. § 404.1529 (c)(3)(i); SSR 16-3p.  If the claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "While a [Plaintiff] need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a [Plaintiff's] symptom claims when the [Plaintiff] reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

As Plaintiff notes, ALJs must be cautious in concluding that a "[Plaintiff's] daily activities are inconsistent with testimony about pain, because impairments that would clearly preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  *Garrison*, 759 F.3d at 1016 (internal citations omitted).  The Ninth Circuit acknowledges that "'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations'" and, for this reason, a claimant's daily activities will have a bearing on credibility only if the level of activity is inconsistent with claimed limitations.  *Id*.

(citing *Reddick*, 157 F.3d at 722).  Further, an ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 541, 601-02 (9th Cir. 1999).

At his administrative hearing, Plaintiff testified that he did not engage in any activity outside his home, had difficulty getting dressed and taking showers, experienced problems concentrating and completing tasks, suffered from memory loss, and could not drive long distances.  AR 36-41. However, at his April 16, 2014 Social Security Disability evaluation, Plaintiff told Dr. Richard Yao

> that he is capable of meeting his daily chores and household responsibilities, but reported that "heavy chores" can be difficult due to his chronic pain.  [Plaintiff] reported that he gets tired easily and takes frequent breaks.  [Plaintiff] reported that he is responsible for the household shopping.  [Plaintiff] has a valid driver's license and denied any difficulties driving.  [Plaintiff] reported that he is capable of meeting his daily hygiene and grooming responsibilities with no difficulty.  [Plaintiff] reported that he is capable of managing his financial resources.  [Plaintiff] reported a good social support network.  [Plaintiff] reported that he has numerous friends and good family support at this time, but indicated that he tends to isolate and withdraw from them due to his depressive symptoms.  [Plaintiff] reported a wide range of leisure activities, including enjoying the outdoors, going out to dinner, and entertaining at home on occasion.

AR 295.

Just as other courts have upheld decisions in which a claimant has been able to "care for [his] own personal needs, cook, clean and shop," the ALJ's finding with respect to the inconsistency between Plaintiff's testimony regarding daily activities and his allegation of disability should be upheld.  *Burch*, 400 F.3d at 680.  "If a claimant engages in daily activities involving skills that could be transferred to the workplace," as here, "the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."  *Id.*, citing *Fair*, 885 F.2d at 603; *Morgan*, 169 F.3d at 600 (the ALJ properly determined an ability to fix meals, do laundry, and work in the yard served as evidence of Plaintiff's ability to work).  The ALJ found Plaintiff's daily activities were inconsistent with his allegation of disability, and made specific findings to each of the contested activities.  AR 22-23.

Plaintiff argues the ALJ failed to acknowledge that he tires easily and takes frequent breaks while doing chores.  ECF No. 17 at 14.  However, as the Defendant points out, Plaintiff neglects to mention that he was referencing "heavy" chores when making these statements, which would require

far more physical exertion than required to perform a sedentary job.  AR 295.  The ALJ did fail to mention that Plaintiff tends to withdraw from his friends and family due to his depressive symptoms. *Id*.  Additionally, Plaintiff contends the ALJ erred because Plaintiff's ability to engage in the cited activities is contingent on his level of functioning on a particular day.  ECF No. 17 at 15.  However, even if the ALJ erred in these respects, the errors were harmless because they were inconsequential to the non-disability decision.  *Burch*, 400 F.3d at 679; *Stout*, 454 F.3d at 1055.  These alleged errors do not change the fact that Plaintiff's daily activities, as he described them in his testimony, were overall inconsistent with his previous statements about the impairments caused by his pain.

Further, the ALJ properly assigned no weight to Plaintiff's podiatrist's opinion.  AR 22.  In September 2014, the podiatrist, Dr. Tilton, stated that Plaintiff continued to have pain, anxiety, depression, nervousness, and memory loss that were contributing to his inability to work.  AR 378. Dr. Tilton also reported that he and Plaintiff "discussed [Plaintiff's] painful neuropathy, which as I understand is the primary reason for his disability."  *Id*.  Despite this statement, Dr. Tilton also reported that Plaintiff's hammertoes deformities, the condition for which he was treating Plaintiff, were being treated successfully and assessed no limitations.  *Id*.

Here, the ALJ sufficiently articulated how he considered Dr. Tilton's medical opinion, because he discussed its supportability and consistency with the other evidence.  AR 22; 20 C.F.R. §§ 404.1520c(a); 416.920c(c)(3).  The ALJ gave two sufficient reasons for assigning no weight to Dr. Tilton's opinion.  *Id*.  First, Dr. Tilton's statements regarding Plaintiff's inability to work and his disability are determinations specifically reserved for the Commissioner.  AR 22; *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) ("[a] treating physician's opinion . . . is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability"). Second, Dr. Tilton relied on an assessment of peripheral neuropathy, for which he never treated Plaintiff.  AR 22, 378.  Dr. Tilton admits as much when he stated: "I am not treating [Plaintiff's neuropathy] primarily for him, as he is already on several medications that seem to be working for him."  *Id*.  Based on this analysis by the ALJ, he found Dr. Tilton's statements were not authorized by the Social Security Regulations, nor were his statements well-supported by or consistent with the

objective medical evidence.  AR 22.  As made clear in the law, the ALJ's decision to assign no weight to Dr. Tilton's opinion was consistent with the rules that govern his analysis.  *See* 20 C.F.R. §§ 404.1520c(a); 416.920c(c)(3).

For the reason stated above, the ALJ's findings of inconsistency between Plaintiff's testimony and prior reports regarding his daily activities provide a clear and convincing reason to discount Plaintiff's reports of symptoms and limitations.

ii.    *The ALJ properly determined that Plaintiff's impairments were well controlled with treatment.*

The ALJ is entitled to consider effectiveness of treatment and medical improvement when evaluating a claimant's subjective statements.  20 C.F.R. § 404.1529(c)(3)(iv); SSR 16-3p; *Warre v. Comm'r Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits") (internal citation omitted).  Here, the ALJ found that Plaintiff's physical impairments were well controlled with treatment.  AR 21.[7]

The ALJ found Plaintiff's AIDS is well controlled with treatment.  "Treatment notes reveal that the [Plaintiff's] AIDS was under good control, with undetectable viral loads, and he was doing well on medication without mention of significant side effects."  AR 21.  Plaintiff concedes his AIDS has been controlled for the most part with treatment.  ECF No. 17 at 10.

Moving to Plaintiff's peripheral edema, the ALJ found Plaintiff's peripheral edema of the bilateral lower extremities with neuropathy is also well controlled with treatment.  AR 21.  Although Plaintiff initially experienced adverse side effects from his neuropathy medication, Plaintiff reported satisfaction with a different regimen.[8]  In July 2014, Dr. McHugh reported that Plaintiff's edema had "improved considerably" after he switched over to the new medication.  AR 354.  In September 2014, Dr. Tilton noted that Plaintiff "is already on several medications that seem to be working for

---

[7]    Neither party, nor the ALJ, discuss efficacy of treatment with respect to Plaintiff's mental health.  Accordingly, the Court limits its discussion to the efficacy of treatment with respect to Plaintiff's physical health.

[8]    As previously stated, Plaintiff reported side effects from taking Lyrica for his neuropathy in April 2013.  AR 247.  Plaintiff also experienced undesirable side effects with Gabapentin, the neuropathy medication he took before Lyrica.  *Id.*  Plaintiff "denie[d] suicidal ideation ever since the discontinuation of the Lyrica" and switching his neuropathy regimen to hydrocodone and Cymbalta.  AR 252; *see also* AR 273, 276, 279.

[his neuropathy]," and that his foot problems were "being addressed successfully."  AR 378.
Plaintiff concedes that his neuropathy pain has been controlled since May 2015, after he increased
his Cymbalta dosage to 60mg.  ECF No. 17 at 6, AR 409.  However, Plaintiff claims that such
improvement only occurred while he was unemployed and free to elevate his legs at will.  ECF No.
17 at 11.  Plaintiff urges the Court to take his relative improvement in context of the overall
diagnostic picture.  AR 17 at 10.

Plaintiff cites to *Garrison* for support of his contention that his "relative [physical]
improvement must be taken in context."  ECF No. 17 at 10.  Unfortunately, Plaintiff's cite fails to
mention the operative language to which this rule applies: "reports of 'improvement' *in the context
of mental health issues* . . . must be interpreted with an awareness that improved functioning while
being treated and while limiting environmental stressors does not always mean that a claimant can
function effectively in a workplace."  *Garrison,* 759 F.3d at 1017-18 (citing *Hutsell v. Massanari*,
259 F.3d 707, 712 (8th Cir. 2001) (reversing a district court's decision that a claimant with various
chronic schizophrenia-based disorders could return to her past work as a cook or cook's helper,
because this finding was not supported by substantial evidence)) (emphasis added).  Because
neuropathy concerns Plaintiff's physical health, not his mental health, Plaintiff's reliance on
*Garrison* for this argument is inapposite.

As the Defendant correctly observes, if findings of medical improvement while a claimant is
unemployed translated into a rule that the ALJ could not consider such improvement as part of the
subjective statement analysis, then it is likely that the ALJ would rarely be able to cite improvement
as a factor because a claimant will always be unemployed during the relevant adjudicatory period.
ECF No. 18 at 8; *see Warre*, 439 F.3d at 1006 ("the key question is not whether the claimant still
suffered from the same medical problem he had when benefits were awarded, but whether the
severity of the problem had decreased sufficiently to enable him to engage in gainful activity").  In
this case, Plaintiff's edema actually resolved because he stopped working as a flight attendant, a job
that required nearly constant standing and walking, and not because he was unemployed generally.

ECF No. 18 at 8; AR 193, 346.  As such, the ALJ properly considered the effectiveness of Plaintiff's treatment and medical improvement in evaluating his subjective statements after he ceased working as a flight attendant.

In sum, the ALJ's finding that Plaintiff's physical impairments are well controlled with treatment is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms and complaints.

> iii.    *The ALJ properly determined that Plaintiff's treating physicians recommended conservative treatment to treat his peripheral neuropathy.*

The ALJ found Plaintiff's treating physicians recommended only conservative modalities to treat his peripheral neuropathy.  AR 21.  "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

The objective evidence shows that Plaintiff's conservative treatment consisted primarily of medication, elevating his legs at night, using compression socks, not walking in the dark, and taking diuretics as needed.  AR 348, 351, 355, 365, 396.  Plaintiff counsel conceded that "the doctors have indicated that [Plaintiff] has to keep his legs elevated, use[] compression stockings, use diuretics. [Plaintiff] has [also] been advised to avoid walking in the dark . . . to use a slower chair."  AR 32. The Court acknowledges that Plaintiff experienced adverse side effects along with his peripheral neuropathy regimen.  ECF No. 17 at 12.  Indeed, because the side effects of medication can affect an individual's ability to work, the ALJ properly considers them in disability determinations.  *Varney v. Secretary of Health & Human Services*, 846 F.2d 581, 585 (9th Cir. 1988) ("*Varney I*"), *modified on rehearing*, 859 F.2d 1396 (9th Cir. 1988) ("*Varney II*").  However, as explained above, Plaintiff's adverse side effects subsided once he discontinued use of Lyrica and Gabapentin and rotated to

hydrocodone and Cymbalta.  AR 252, 273, 276, 279.  Plaintiff's reports regarding the disabling nature of his pain are therefore undermined because he responded well to his conservative treatment. *See Tommasetti*, 533 F.3d at 1040.  Accordingly, the ALJ's finding that Plaintiff was receiving conservative treatment is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms and complaints.

> iv.    *The ALJ was incorrect when he found that Plaintiff's evidence was internally inconsistent with Dr. Russo and Dr. Arnow's opinions and Plaintiff's peripheral edema of the bilateral lower extremities with neuropathy.*

With respect to Plaintiff's peripheral edema of the bilateral lower extremities with neuropathy, the Court finds that the ALJ's finding of inconsistency in the evidence was erroneous. Plaintiff argues that his need to elevate his legs is vocationally relevant because the vocational expert stated that no work would be available to an individual who needs to elevate their feet for most of the work day.  AR 44.  Dr. Kalla opined that Plaintiff's "edema . . . has resolved since he quit his job and elevated his legs . . .  [h]is swelling is controlled as long as he doesn't stand too long."  AR 346.  Three days later, Plaintiff was diagnosed by Dr. McHugh with 1+ edema.  ECF No. 17 at 11, AR 383.  To the extent that this evidence is inconsistent, it helps Plaintiff because it demonstrates that his edema was not resolved, despite a finding to the contrary by another treating physician. Defendant claims that Plaintiff "contended that he must elevate his feet most of the day and his edema is resolved *only* if he does so" both at the administrative hearing and in his briefing.  ECF No. 19 at 10.  The record does not reflect this.  At the administrative hearing, Plaintiff's counsel stated that "[t]he doctors have indicated that [claimant] has to keep his legs elevated . . .."  AR 32. Plaintiff's brief notes that "he had 'much less' swelling during the day, but the provider did not describe a complete resolution."  ECF No. 17 at 11, *citing* AR 383.  These statements are consistent with what Plaintiff reported to Dr. McHugh: that his edema tends to resolve if he elevates his legs at night, and that he experienced "much less swelling during the day."  AR 383.  Although the ALJ erred in discounting Plaintiff's allegation of peripheral neuropathy on the basis of allegedly inconsistent objective medical evidence, it amounted to harmless error because the ALJ cited other

valid, sufficiently supported reasons for his ultimate conclusion that the claimant's symptoms and complaints should be discounted. *Infra* at 25; *see also Burch*, 400 F.3d at 679; *Stout*, 454 F.3d at 1055.

Plaintiff argues that the ALJ erred to the extent that he relied on the state agency medical consultants, Dr. Libbie Russo and Dr. Jon Arnow, to reject his symptom testimony. ECF No. 17 at 13. In June 2014, Dr. Russo found that Plaintiff is able to perform work at the light exertional level. AR 56. Dr. Russo further found that Plaintiff is able to occasionally climb ladders, ropes, and scaffolds, and is able to frequently climb ramps and stairs. *Id*. In December 2014, Dr. Arnow found that Plaintiff is able to perform work at the light exertional level. AR 72. Dr. Arnow further found that Plaintiff is unable to climb ladders, ropes, or scaffolds, and is able to frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. *Id*.

Here, the ALJ failed to sufficiently articulate how he considered Dr. Russo and Dr. Arnow's medical opinions because he did not discuss their supportability and consistency with the other evidence. AR 22; *see* 20 C.F.R. §§ 404.1520c(a); 416.920c(c)(3). The ALJ claims that he did "not fail[] to consider the findings of the state agency review consultants, whose findings are afforded weight as the opinions of non-examining experts." AR 22. Apart from this bald assertion and the opinions themselves, there is no discussion of the supportability or consistency of the state agency non-examining consultants' opinions in relation to the other medical evidence. *Id*. Therefore, the ALJ erred when he failed to articulate the basis for his treatment of these consultants when applying their opinions to Plaintiff's disability assessment in accordance with the rules that govern this analysis. *See* 20 C.F.R. §§ 404.1520c(a); 416.920c(c)(3).

Although the ALJ erred in failing to articulate the supportability and consistency factors with respect to Dr. Russo and Dr. Arnow's medical opinions, this too was harmless error because the ALJ cited other valid, sufficiently supported reasons for his ultimate conclusion that the claimant's symptoms and complaints should be discounted. *Infra* at 25; *see also Burch*, 400 F.3d at 679; *Stout*, 454 F.3d at 1055.

> v.    The ALJ's finding that Plaintiff's evidence was internally inconsistent
> was not sufficiently supported by substantial evidence, but the ALJ's
> error was harmless.

In summary, the ALJ's finding that Plaintiff's testimony of daily activities was inconsistent with the medical record was correct. *See supra* Section III.F.1.b.i. However, the ALJ's finding of inconsistency with respect to Plaintiff's peripheral edema of the bilateral lower extremities with neuropathy was erroneous. *See supra* Section III.F.1.b.ii. The ALJ correctly assigned no weight to Dr. Tilton's opinion because it was unsupported and inconsistent with the other evidence. *See supra* Section III.F.1.b.i. However, the ALJ erred when assigning weight to Dr. Russo and Dr. Arnow's medical opinions without discussing whether their opinions were supported and consistent with the other evidence. *See supra* at 24-25. Accordingly, the ALJ's finding that Plaintiff's evidence is internally inconsistent is not supported by substantial evidence, and therefore was not a clear and convincing reason to discount all of Plaintiff's symptoms and complaints.

Notwithstanding the above, the ALJ's error was harmless because the ALJ cited other valid, sufficiently supported reasons for his ultimate conclusion that the claimant's symptoms and complaints should be discounted. These include the inconsistency of the objective medical evidence with Plaintiff's alleged physical health symptoms (AR 21), mental health symptoms (AR 18-20), and cognitive impairment (AR 18-19); Plaintiff's reported daily activities with his allegation of disability (AR 22-23); Plaintiff's responsiveness to medication (AR 21); and, the treating physicians' recommendations of only conservative treatment to treat Plaintiff's peripheral neuropathy (AR 21). *Burch*, 400 F.3d at 679; *see also Stout*, 454 F.3d at 1055.

### 2.    Contrary to Defendant's Assertions, Plaintiff Addressed, And Therefore Did Not Waive Arguments To, All Of The Factors That The ALJ Discussed In His Opening Brief, But His Arguments Fail Because The ALJ Cites Other Valid Reasons To Discount Plaintiff's Testimony

A claimant must raise all arguments in his opening brief, otherwise they are waived. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the district court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 100 (9th Cir. 1998) (the district court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Here, Defendant alleges Plaintiff did not address all of the factors that the ALJ discussed in his opening brief, and therefore waived any arguments

regarding the same.  AR 19, 21-22.  However, it appears Plaintiff sufficiently addressed the ALJ's finding of inconsistent statements in his opening brief.  ECF No. 17 at 11:22-24; 14:6-15:3; 15:20-22.  Additionally, Defendant claims Plaintiff did not address his purported lack of mental health treatment or normal mental health findings, but this is not supported by the record.  ECF No. 17 at 15:25-16:20.

Notwithstanding, the Ninth Circuit holds that an ALJ's overall credibility finding will be upheld if the ALJ cites other valid factors.  *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record"); *Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

Accordingly, the ALJ properly discounted Plaintiff's subjective complaints for four clear and convincing reasons: (1) the objective evidence did not support the degree of limitations Plaintiff alleged; (2) Plaintiff's impairments were well controlled with treatment; (3) Plaintiff's daily activities were inconsistent with his statements about his impairments; and, (4) Plaintiff received conservative treatment for his allegedly disabling impairments.

### 3.    The ALJ's Consideration Of The Vocational Expert Testimony

The ALJ determined that Plaintiff could perform past relevant work as a travel clerk as generally performed, but not as actually performed, in the national economy.  AR 23, 42-43.  Plaintiff argues that the ALJ improperly relied on the vocational expert's classification of Plaintiff's past relevant work because the cited to occupation is inconsistent with what Plaintiff actually did.  ECF No. 17 at 18.

At step four in the sequential evaluation process, Plaintiff bears the burden of showing that he could no longer perform his past relevant work.  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)).  In turn, the ALJ must make findings of fact regarding Plaintiff's RFC, the physical and mental demands of Plaintiff's RFC, the physical and mental demands of Plaintiff's past work, and whether Plaintiff can return to past

relevant work either as actually performed or as generally performed in the national economy. *Id.*; *Pinto*, 249 F.3d at 845. If a claimant can perform his past relevant work either as actually performed or as generally performed, he is not disabled. *See Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). The Social Security Regulations state that the ALJ may draw on two sources of information to define Plaintiff's past relevant work as actually performed: (1) Plaintiff's own testimony; and, (2) a properly completed vocational report. *Pinto*, 249 F.3d at 845. The ALJ has an affirmative duty to determine whether the vocational expert's testimony conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007); *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) ("When there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the inconsistency.").

In a work history report from March 30, 2014, Plaintiff explained that his work as a concierge (or travel clerk) involved the following responsibilities:

> [a]ssisted hotel guests, booking, sightseeing tours, show reservations, car rentals, dinner reservations, recorded voice-overs, MC'ed [acted as master of ceremonies] entertainment shows for guests, coordinated and assembled guests promotional gift bags, placed door hangers with information on guest room doors throughout resort.

ECF No. 17 at 19; AR 192, 194. Plaintiff walked for 1.5 hours, stood for 5.5 hours, and sat for 2 hours per day. AR 192. Plaintiff reported carrying boxes up to 50 pounds to another building as needed up to three times per day. *Id*. Plaintiff frequently lifted less than 10 pounds, and the heaviest weight he lifted was 50 pounds. *Id*.

At his administrative hearing, Plaintiff testified that he last worked as a concierge at a time share resort for approximately five years. AR 33. Plaintiff testified that he assisted the guests and time share owners with reservations, provided information about the city and the surrounding areas, "did announcements and everything for the resort, and went around and put door hangers on, things of that nature." *Id*. Plaintiff spent the majority of his eight-hour shift on his feet, although his work gave him "accommodations to sit down." AR 36. He lifted anywhere between 25 to 35 pounds. *Id*.

Plaintiff argues that the DOT's description of the "travel clerk" occupation does not include all the tasks he performed as a concierge and, therefore, the ALJ erred by classifying his occupation according to its least demanding function. ECF No. 17 at 20; *see Valencia v. Heckler*, 751 F.2d

1082, 1086 ("To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act."). Plaintiff claims that he spent the majority of his day on his feet and engaged in a number of activities outside the universe of tasks performed by a travel clerk as defined under the DOT. ECF No. 17 at 20-21. Plaintiff contends that the DOT's travel clerk description does not "include recording voice-overs, acting as master of ceremonies during entertainment shows, preparing and assembling gift bags, [and] going from room-to-room placing information on guest doors." ECF No. 17 at 20.

Plaintiff's argument fails for two reasons. First, Plaintiff's counsel failed to challenge the vocational expert's conclusion that Plaintiff could perform his past work at the administrative hearing on cross examination. "At least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (providing that a failure to challenge the evidentiary basis of a vocational expert's job numbers precluded preservation of the issue for litigation in district court, absent a showing of good cause). Thus, Plaintiff is barred from contesting the vocational expert's classification of his past relevant work on appellate review. Second, even assuming that Plaintiff's counsel did challenge the vocational expert's conclusion at the administrative hearing, his argument is not compelling because his past relevant work as a concierge is mostly consistent with the duties of a travel clerk as defined under the DOT. The "generally performed test" is "designed for situations where a claimant's past job was especially demanding when compared with industry standards." *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (internal citation omitted). Here, although Plaintiff states that he spent 5.5 hours standing per day at his previous job, this does not mean that working as a travel clerk as generally performed in the national economy requires him to do so. AR 192. Further, as Defendant notes, "only two tasks [Plaintiff described] would require standing and walking: placing door hangers on guest room doors or carrying boxes. . . . All the other tasks, including those listed in the travel clerk description, could reasonably be performed sitting or standing." ECF No. 18 at 14.

This Court is required to defer to the ALJ's conclusion when the evidence before the ALJ is subject to more than one rational interpretation. *Batson*, 359 F.3d at 1198. Accordingly, the Court finds Plaintiff has not carried his burden in proving that he cannot perform his prior relevant work either as actually performed or as generally performed in the national economy. *Carmickle*, 533 F.3d at 1166.

## IV. CONCLUSION

The ALJ's decision that Plaintiff has the residual functional capacity to perform his past relevant work is supported by substantial evidence in the record. The ALJ demonstrated, using the clear and convincing standard, that (a) Plaintiff's impairments were well-controlled with treatment; (b) Plaintiff engaged in daily activities inconsistent with his allegations of disability; and, (c) Plaintiff received conservative treatment for his allegedly disabling impairments. While the ALJ failed to demonstrate that Plaintiff's subjective complaints should be discounted because the evidence was internally inconsistent, this error was harmless. The ALJ cited additional, valid reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. The ALJ appropriately determined that Plaintiff could perform past relevant work as a travel clerk. Plaintiff did not demonstrate that he lacks the ability to perform his previous work as generally performed in the national economy.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (ECF No. 17) be DENIED, and that the Defendant's Cross Motion to Affirm (ECF No. 18) be GRANTED.

DATED this 16th day of September.

_____
ELAYNA J. YOUCHAH
United States Magistrate Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).